NO. _____

| | | |
|---|---|---|
| **DOUGLAS GREER** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **JOHN DOE and THOMAS** | § | |
| **TRANSPORTATION** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION and REQUEST FOR DISCOVERY

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Douglas Greer, hereinafter called Plaintiff, complaining of and about

JOHN DOE and Thomas Transportation, hereinafter called Defendant, and for cause of action

shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2.    Plaintiff, Douglas Greer, is an Individual whose is a resident of Texas.

3.    The last four numbers of Douglas Greer's social security number are 4605.

4.    Defendant JOHN DOE, an Individual who's address is unknown at this time.

5.    Defendant Thomas Transportation is a foreign corporation and existing under the

laws of the State of Georgia whose registered office address is 1825 Oak Haven Drive, Albany,

Georgia 31701 and, pursuant to T.C.P.R.C. §17.044(b) may be served with process by serving

the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service

Plaintiff's Original Petition and Requ[...]                                         Page 1

DEFENDANT'S
EXHIBIT
A

because Defendant Thomas Transportation engages in business in Texas but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process in Texas. This suit arises from Defendant Thomas Transportation doing business in Texas.

## JURISDICTION AND VENUE

6.   The subject matter in controversy is within the jurisdictional limits of this court.

7.   Plaintiff seeks:

    a.   monetary relief over $100,000 but not more than $200,000.

8.   Venue in Tarrant County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

9.   Venue in Tarrant County is proper in this cause.

## FACTS

10.   On October 5th, 2015, at approximately 6:00 p.m., Douglas Greer was driving eastbound on Interstate 20 in Tarrant County, Texas when the Defendant, JOHN DOE, failed to maintain a proper lookout and speed, causing him to collide with the rear end of Plaintiff's vehicle.

11.   As a result of the incident described herein, Plaintiff suffered serious injuries that required medical treatment. The treatment sought by Plaintiff was reasonable and necessary for the injuries he sustained.

## RESPONDEAT SUPERIOR

12.     Whenever in this Petition it is alleged that Defendants did or failed to do any particular act and/or omission, it is meant that Defendants, acting individually, or by and through agents, officers, directors, servants, and employees, either did or failed to do that particular act and/or omission, in the course and scope of his employment, agency or contract with Defendants, and in furtherance of Defendants' business. Pursuant to Texas Rules of Civil Procedure 28, any entity doing business under an assumed name may be sued in its assumed name for the purpose of enforcing against it a substantive right.

## NEGLIGENCE PER SE

1.     Defendants, collectively, individually, and/or through its agents or employees, violated safety rules and regulations that are intended to protect against the harm that resulted and to  protect the Plaintiff and class of persons to which she belongs.

2.     Defendants violated, among other safety rules, sections 542.206, 545.062 and 545.351  of the Texas Transportation Code, Rules 390.11, 391.11, 391.13, 392.6 of the Federal Motor Carrier  Safety Regulations, and other safety standards and regulations designed to protect against the type of  harm that resulted from Defendants' negligent and grossly negligent operation of the tractor trailer  involved in the incident in questions.

3.     These regulations provide minimum standards and do not allow for judgment or   discretion in whether or how to comply with the regulations.  The safety standards were intended to  protect members of the public, including the Plaintiff Douglas Greer.  Defendants' violation of these  safety rules, regulations, and industry safety standards constitutes *negligence per se.*

## PLAINTIFF'S CLAIM OF NEGLIGENCE
## AGAINST JOHN DOE

4.     Plaintiff would show that Defendant JOHN DOE was the driver of a tractor-trailer operated for profit. Further, Plaintiff would show this Court that the negligent acts and omissions of the Defendant JOHN DOE and statutory violations, as set out herein, separately and collectively, were a direct and proximate cause of the incident in question and the resulting injuries and damages sustained by Plaintiff. Any statutory violations constitute negligence *per se*.

5.     Defendant's violation of §545.351 of the Texas Transportation Code, as well as other sections of the Texas Transportation Code and the Federal Motor Carrier Safety Regulations constitutes negligence per se. These rules were designed for the protection of a class of persons including Plaintiff. Defendant's violations of these rules and statutes created a risk of injury to Plaintiff which the standards were designed to protect against. Such negligence was a proximate cause of the injuries and damages suffered by the Plaintiff.

6.     The negligent, careless and reckless disregard of the duty owed by Defendant JOHN DOE also consisted of, but is not limited to, the following acts and omissions:

   a.     failing to keep a proper lookout for Plaintiff's safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;
   b.     failing to yield as a person of prudent care would have done;
   c.     operating his motor vehicle at a rate of speed which was greater than that would have been operated by a person of ordinary prudence under the same or similar circumstances;
   d.     failing to apply the brakes to his motor vehicle in a timely and prudent manner;
   e.     failing to control his speed and driving at an unsafe speed in violation of §545.351 of the Texas Transportation Code;
   f.     failing to take reasonable care in controlling his vehicle;

g.   operating his vehicle without due regard for the rights of others;
h.   driver inattention;
i.   failure to control his vehicle;
j.   violating §545.351 of the Texas Transportation Code;
k.   failing to comply with the Federal Motor Carrier Safety Regulations; and
l.   such additional acts of negligence, which will be established as the case progresses.

## PLAINTIFF'S CAUSE OF ACTION AGAINST THOMAS TRANSPORTATION

7.      The negligent acts and omissions of Defendant  Thomas Transportation and statutory violations, as set out herein, separately and collectively, were a direct and proximate cause of the incident in question and the resulting injuries and damages sustained by  Plaintiff. Any statutory violations constitute negligence *per* se. More specifically, Defendants  violated §545.351 of the Texas Transportation Code, among others, as well as sections of the Federal Motor Carrier Safety Regulations.

8.      Defendants' violations of these rules and statutes created a risk of injury to Plaintiff  which the standards were designed to protect against. Such negligence was a proximate cause of the  injuries and damages suffered by the Plaintiff.

9.      Defendants' negligent acts and omissions also include, among others, the following:

a.   At the time and on the occasion in question, Defendant JOHN DOE  was in the course and scope of his employment with Defendant Thomas Transportation by virtue of the theory of respondeat superior, Defendant Thomas Transportation is liable for all acts and omissions of negligence of its agent, employee, or representative, Defendant JOHN DOE;
b.   entrusting the vehicle to Defendant JOHN DOE when Defendant Thomas Transportation knew or should have known that Defendant JOHN DOE was an incompetent driver, unqualified to drive a commercial motor vehicle, inadequately trained, and/or reckless;
c.   failing to properly train Defendant JOHN DOE in the operation of the

vehicle in question;

d. hiring and entrusting incompetent drivers, including JOHN DOE, with the right to operate a commercial motor vehicle;

e. failing to do what a reasonably prudent motor carrier would do under the same and similar circumstance;

f. failing to comply with the Texas Transportation Code and the Federal Motor Carrier Safety Regulations; and

g. such other acts of negligence, which will be established as the case progresses.

10.    Defendant's conduct was conducted with reckless disregard of the safety of others, including Plaintiff, and conscious indifference to the rights, welfare and safety of those persons affected by it, including Plaintiff.

### GROSS NEGLIGENCE

11.    Plaintiff respectfully shows this court and jury that the injuries and damages that Plaintiff sustained in the incident in question were caused by the gross negligence of Defendants acting by and through their employees, agents, drivers, officers, and representatives in the course of employment for said Defendants.

12.    Plaintiff would further show, these acts and omissions, when viewed from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and others. Defendants had actual, subjective awareness of the risks of their conduct, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and others.

13.    Additionally, Defendant Thomas Transportation is grossly negligent as a result of recklessly hiring and entrusting a commercial motor vehicle to JOHN DOE, who was unqualified, through training and/or experience, to operate a commercial motor vehicle. The reckless hiring of and entrusting a commercial motor vehicle to JOHN DOE, who was unfit to

operate a commercial motor vehicle, proximately caused Plaintiff's damages.

14.     As such, Defendants are grossly negligent and should be subjected to exemplary damages.

## DAMAGES FOR PLAINTIFF DOUGLAS GREER

15.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff Douglas Greer has suffered severe injuries and incurred the following damages:

      a.     Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff, Douglas Greer, for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services;

      b.     Reasonable and necessary medical care and expenses that will, in all reasonable probability, be incurred in the future;

      c.     Physical pain and suffering in the past;

      d.     Physical pain and suffering that will, in all reasonable probability, be suffered in the future;

      e.     Physical impairment in the past;

      f.     Physical impairment which, in all reasonable probability, will be suffered in the future;

      g.     Mental anguish in the past;

      h.     Mental anguish which, in all reasonable probability, will be suffered in the future;

      i.     Loss of earnings and/or earning capacity in the past;

      j.     Loss of earning capacity, which, in all probability, will be incurred in the future;

      k.     Disfigurement in the past and future; and

      n.     Cost of medical monitoring and prevention in the future.

## PLAINTIFF'S REQUEST FOR DISCOVERY

### A. Request for Disclosure

Defendant is hereby requested to disclose, within fifty (50) days of service of this petition and incorporated request, the information or material described in Rule 194.2(a)-(i) of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

### B. Interrogatories

Defendant is hereby requested to answer, within fifty (50) days of service this petition and incorporated request, the interrogatories attached hereto as "Exhibit A," separately, fully, in writing, and under oath, pursuant to Rule 197 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

### C. Request for Production

Defendant is hereby requested to produce, within fifty (50) days of service of this petition and incorporated request the documents and tangible items in the list attached hereto as "Exhibit B," pursuant to Rule 196 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

### D. Request for Admissions

Defendant is hereby requested to admit or deny, in writing, within (50) days of service of this petition and incorporated request, the propositions of fact and/or law attached hereto as "Exhibit C," pursuant to Rule 198 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Douglas Greer, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, excluding interest, and as allowed by Sec. 41.008, Chapter 41, Texas Civil Practice and Remedies Code, together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

Godsey Martin, P.C.

By: _____

Ryan E. Rogers
Texas Bar No. 24011200
1909 Woodall Rodgers Freeway, Suite 200
Dallas, TX 75201
Tel. (214) 744-3339
Fax. (972) 301-2444
Email: rrogers@gmfirm.com
Eservice: GMLIT@gmfirm.cm
Paralegal: maguilar@gmfirm.com
Attorney for Plaintiff
Douglas Greer

**"EXHIBIT A"**

## PLAINTIFF'S INTERROGATORIES TO
## DEFENDANT THOMAS TRANSPORTATION TRUCKING COMPANY
### DEFINITIONS AND INSTRUCTIONS

1.     As used herein, the terms "you" and "your" shall refer to Thomas Transportation, Thomas Transportation's attorneys, agents, and all other natural persons or business or legal entities acting or purporting to act for or on behalf of JOHN DOE, whether authorized to do so or not.

2.     As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements; interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and

recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3.    In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.    "Person": The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

5.    "Identify" or "Identification":

(a)    When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(b)    When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its Chief Executive Officer and telephone number.

(c)    When used in reference to a document, "identify" or "identification" shall include statement of the following:

(i)    the title, heading, or caption, if any, of such document;

(ii)    the identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

(iii)    the date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate date on which such document was prepared;

(iv)    the number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.),

with sufficient particularity so as to enable such document to be precisely identified;

(v)    the name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

(vi)    the name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

(vii)    the physical location of the document and the name of its custodian or custodians.

6.    "Settlement": as used herein, means:

(a)    an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, arrangement, deal, understanding, loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiff and any defendant or between any defendant herein whereby plaintiff or defendant have in any way released, compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein.

(b)    any resolution of the differences between the plaintiff and defendant by loan to the plaintiff or any other device which is repayable in whole or in part out of any judgment the plaintiff may recover against defendant.

(c)    The term "settlement" shall also include "Mary Carter Agreements" as that term is used under Texas Law.

7.    Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.

## INTERROGATORIES

1.   Please state the full name, address, telephone number, date of birth, driver's license number, social security number, and occupation of the person answering these interrogatories.

**ANSWER:**

2.   State the Style, Court and Cause number of any lawsuit Thomas Transportation has been a party to and the final disposition of said suit.

**ANSWER:**

3.   Please state any and all traffic violations you are aware of involving Charlie Hand in the ten (10) years preceding this collision. Please indicate if you are aware if Charlie Hand had his/her driving license revoked due to any of these violations and the period of time his/her license was revoked.

**ANSWER:**

4.   Please list any other motor vehicle accidents in the past ten (10) years involving Charlie Hand and employees of Thomas Transportation. Please list the date and location of such accident, the parties involved and a factual description of the accident.

**ANSWER:**

5.   List all criminal arrests and/or charges against that you are aware of pertaining to Charlie Hand by giving the cause number; identities of all accused; court of jurisdiction; description of criminal charges; date and place of arrest; plea made; date of trial and/or plea bargain; whether or not convicted and on what charges; time served; date of release from confinement; whether or not granted pardon or parole, and if so, date pardon granted or parole was or will be successfully completed.

**ANSWER:**

6.   State in detail what intoxicating beverages, if any, Charlie Hand had consumed and what drugs and/or medications you had taken for the 24 hour period prior to the collision.

**ANSWER:**

7.   Was a cell phone in use in Charlie Hand's vehicle at the time of the incident? If so, state whether or not the cell phone is provided by Thomas Transportation, the name of the cell phone provider, the cell phone number, and the name of the person who receives the bill for the cell phone(s).

**ANSWER:**

8.   Have you, your agents, investigators or attorneys or anyone acting on your behalf obtained a written or recorded statement of any kind, report or memorandum, whether recorded stenographically transcribed, oral or otherwise from any person. If so, please identify the individual from whom the statement was taken and the date the statement was taken. If so, then please also indicate your willingness to allow Douglas Greer to inspect and copy or photograph the same.

**ANSWER:**

9.   Do you, your attorneys or investigators or anyone acting on your behalf, have any maps, charts, diagrams, photographs, videos, motion pictures, and/or recordings taken of the scene of this incident, or of any of the physical or mechanical objects, or of the person involved in this incident? If yes, then please indicate your willingness to allow Douglas Greer to inspect and copy or photograph the same.

**ANSWER:**

10.  Were any tests, inspections or measurements made or taken with respect to the collision scene or any object involved? If so, please state the name, telephone number, and address of the person now having custody of any written report concerning each test, inspection or measurement.

**ANSWER:**

11.     Please state completely and fully all representations, statements, declarations or admissions made by Douglas Greer or any agent, servant or employee of Douglas Greer. Include in your answer when the communication was made, the total verbatim communication and, if that is not possible, then state the detailed substance of the communication, by whom the communication was made, where such communication took place, and all persons present when such communication was made.

**ANSWER:**

12.     Please give a detailed description of your understanding of how the collision made the basis of the lawsuit occurred. Please indicate in your description the speed or estimated speed that the vehicles were traveling at the time of the incident. On the back of this sheet, please draw a diagram to indicate the location of the accident and the direction that the vehicles were traveling at the time of the collision.

**ANSWER:**

13.     Please state the full name, address, date of birth of the driver involved in the incident in question.

**ANSWER:**

## VERIFICATION

**STATE OF TEXAS**                          §
                                            §
**COUNTY OF**                               §

      BEFORE ME, the undersigned authority, personally appeared

_____ (please print), who stated, upon oath, that the

statements made in the foregoing instrument are within her personal knowledge and are true and

correct.

 

                              _____
                              Authorized Representative of
                              Thomas Transportation

      **SUBSCRIBED AND SWORN TO BEFORE ME** on _____, by

_____.

 

                              _____
                              Notary Public, State of Texas

## "EXHIBIT B"

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
## TO DEFENDANT THOMAS TRANSPORTATION

### DEFINITIONS AND INSTRUCTIONS

1.     As used herein, the terms "you" and "your" shall mean Thomas Transportation, and all attorneys, agents, and other natural persons or business or legal entities acting or purporting to act for or on behalf of Thomas Transportation, whether authorized to do so or not.

2.     As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries or drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements or interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of

testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3.  In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.  "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

5.  Any and all data or information which is in electronic or magnetic form should be produced in a reasonable manner.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## TIME PERIOD

Unless specifically stated in a request for production of documents, all information herein requested is for the entire time period from 10/5/2015, through the date of production of documents requested herein.

## DOCUMENTS TO BE PRODUCED

1. All photographs taken in connection with Plaintiff's cause of action in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

2. All photographs taken of the scene of the accident or the surrounding area of the scene of the accident in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

3. All photographs taken of Douglas Greer which may be in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

4. All pictures, motion pictures, movies, films, or photographic material of any kind taken of Douglas Greer which are in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

5. All pictures, motion pictures, movies, films, or photographic material of any kind concerning the scene, vehicles, products or the events and happenings made the basis of the lawsuit taken before, during or after the accident in question which are in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

6. All written statements made by the Douglas Greer in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

7. All oral statements made by Douglas Greer which were either recorded or taped on an electronic device or recorder which are in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

8. A copy of all documents filed with any state, county, city, federal or governmental agency, institution or department containing information about Douglas Greer which are in the possession, constructive possession, custody or control of Thomas Transportation, Thomas Transportation's attorney or anyone acting on Thomas Transportation's behalf.

9. All written reports of inspection, tests, writings, drawings, graphs, charts, recordings or opinions of any expert who has been used for consultation and whose work product forms a basis either in whole or in part of the opinions of an expert who is to be called as a

witness. (If the discoverable factual materials have not been received or reduced to a tangible form, request is hereby made that Thomas Transportation advise Douglas Greer accordingly and reduce such material to a tangible form).

10.   A curriculum vitae or resume for any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert.

11.   Any and all copies of investigation documentation, reports and/or memoranda made by or submitted to Thomas Transportation, as a result of the accident which has been made the basis of Plaintiff's lawsuit.

12.   Any and all written communications, including but not limited to letters and/or memorandums, between agents, employees and/or representatives of Thomas Transportation that Thomas Transportation prepared as a result of the accident made the basis of Plaintiff's lawsuit.

13.   The title to the vehicle your employee, Thomas Transportation, was driving in this collision and any tractor connected to it.

14.   Bills of lading for any shipments transported by Thomas Transportation, for the day of the collision and the thirty (30) day period preceding the collision.

15.   Any oversized permits or other applicable permits or licenses covering the vehicle or load on the day of the collision.

16.   Charlie Hand's daily logs and his co-driver's logs (if any) for the day of the collision, and the six month period preceding the collision, together with all material required by 49 C.F.R. 396.8 and 395.15 for the driver(s) involved in the above matter together with the results of any computer program used to check logs as well as all results of any audit of the logs by your company or a third party.

17.   All existing driver vehicle inspection reports required under 49 C.F.R. 396.11 for the vehicle involved in the above collision.

18.   All existing daily inspection reports for the tractor and trailer involved in this collision.

19.   All existing maintenance, inspection and repair records or work orders on the tractor and trailer involved in the above collision.

20.   All annual inspection reports for the tractor and trailer involved in the above collision, covering the date of the collision.

21.   Charlie Hand's complete driver's qualification file, as required by 49 C.F.R. 391-51, including but not limited to:

    a. Application for employment
    b. CDL license
    c. Driver's certification of prior traffic violations
    d. Driver's certification of prior collisions
    e. Driver's employment history
    f. Inquiry into driver's employment history
    g. Pre-employment MVR
    h. Annual MVR
    i. Annual review of driver history
    j. Certification of road test
    k. Medical examiner's certificate
    l. Drug testing records
    m. HAZMAT or other training documents

22. Photographs, video, computer generated media, or other recordings of the interior and exterior of vehicles involved in this collision, the collision scene, the occurrence, or relating to any equipment or things originally located at or near the site of the occurrence.

23. The driver's post-collision alcohol and drug testing results.

24. Any lease contracts or agreements covering the driver or the tractor or trailer (vehicle) involved in this collision.

25. Any interchange agreements regarding the tractor or trailer (vehicle) involved in this collision.

26. Any data and printout from on-board recording devices, including but not limited to the ECM (electronic control module), any on-board computer, tachograph, trip monitor, trip recorder, trip master or other recording or tracking device for the day of the collision and the six (6) month period preceding the collision for the equipment involved in the collision.

27. Any post-collision maintenance, inspection, or repair records or invoices in regard to the tractor and trailer involved in the above collision.

28. Any weight tickets, fuel receipts, hotel bills, tolls, or other records of expenses, to include expense sheets and settlement sheets regardless of type (to specifically include Comdata or similar vendor reports), for the truck driver pertaining to trips taken for the day of the collision and thirty (30) days prior to the collision.

29. Any trip reports, dispatch records, trip envelopes regarding the driver or the tractor or trailer involved in this collision for the day of the collision and the thirty (30) day period preceding this collision.

30.    Any e-mails, electronic messages, letters, memos, or other documents concerning this collision.

31.    The collision register maintained by the motor carrier as required by federal law for the one (1) year period preceding this collision.

32.    Any drivers' manuals, guidelines, rules or regulations given to drivers such as the one involved in this collision.

33.    Any reports, memos, notes, logs or other documents evidencing complaints about the driver in the above collision.

34.    Any DOT or PSC reports, memos, notes or correspondence concerning the driver or the tractor or trailer involved in this collision.

35.    Any downloadable computer data from the tractor's (if applicable) computer system.

36.    The pre-trip inspection report completed by the driver for the trip involved in this collision.

37.    All OmniTRAC, Qualcomm, MVPc, QTRACS, OmniExpress, TruckMail, TrailerTRACS, SensorTRACS, JTRACS, and other similar systems data for the six (6) months prior to the collision for this driver and truck.

38.    Cargo pickup or delivery orders prepared by motor carriers, brokers, shippers, receivers, driver, or other persons, or organizations for thirty (30) days prior to the date of the collision as well as the day of the collision.

39.    Accounting records, cargo transportation bills and subsequent payments or other records indicating billings for transportation or subsequent payment for the transportation of cargo, with both the front and back of cancelled checks for cargo transported by the driver and/or truck involved in the collision for thirty (30) days prior to the date of the collision as well as the day of the collision.

40.    Any other items associated in any way with the wreck, documents, database, or other piece of evidence concerning or reflecting upon the driver, the collision, the tractor-trailer, or the truck.

41.    The entire personnel file of the driver involved in this collision.

42.    Any and all communications via CB radio, mobile or satellite communication systems, email, cellular phone, pager or other in cab communication device to include the bills for the devices for the day before, the day of, and the two days after the collision.

43.    All letters, reports, and written material from a government entity involving safety, and
       safety ratings for the company and driver to include, but not be limited to, Department of
       Transportation audits by the state or federal government, the Federal Motor Carrier
       Safety Administration, or material generated on your company or driver pursuant to
       SAFERSYS or CSA 2010

44.    Any and all computer, electronic, or e-mail messages created in the first forty eight hours
       immediately after the incident, by and between the defendant and any agents or third
       parties relating to the facts, circumstances, or actual investigation of the incident as well
       as any computer messages which relate to this particular incident, whether generated or
       received.

45.    If not previously listed, all documents required by Federal Motor Carrier Safety
       Regulation 395.8, specifically those items identified in the Department of
       Transportation's interpretation of the regulation in its Answer to Question 10, a copy of
       which is attached.

46.    All electronic documents and the storage media on which they reside which contain
       relevant, discoverable information beyond that which may be found in printed
       documents. Therefore, even where a paper copy exists, we will seek all documents in
       their electronic form along with information about those documents contained on the
       media. We also will seek paper printouts of only those documents that contain unique
       information after they were printed out (such as paper documents containing
       handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions)
       along with any paper documents for which no corresponding electronic files exist. Our
       discovery requests will ask for certain data on the hard disks, floppy disks and backup
       media used in your computers, some of which data are not readily available to an
       ordinary computer user, such as "deleted" files and "file fragments." As you may know,
       although a user may "erase" or "delete" a file, all that is really erased is a reference to
       that file in a table on the hard disk; unless overwritten with new data, a "deleted" file
       can be as intact on the disk as any "active" file you would see in a directory listing.

       Texas law is clear that all (non-privileged) information available on electronic storage
       media is discoverable, whether readily readable ("active") or "deleted" but recoverable.
       See, TEX. R. CIV. P. 192.3(b) cmt. – 1999.  Santiago v. Miles, 121 F.R.D. 636, 640
       (W.D.N.Y. 1988; a request for "raw information in computer banks" was proper and
       obtainable under the discovery rules); Gates Rubber Co. v. Bando Chemical Indus.,
       Ltd., 167 F.R.D. 90, 112 (D. Colo. 1996; mirror-image copy of everything on a hard
       drive "the method which would yield the most complete and accurate results,"
       chastising a party's expert for failing to do so); and Northwest Airlines, Inc. v.
       Teamsters Local 2000, 163 L.R.R.M. (BNA) 2460, (USDC Minn. 1999); court ordered

image-copying by Northwest's expert of home computer hard drives of employees suspected of orchestrating an illegal "sick-out" on the Internet).

47.  All digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives or floppy disks used by your computers and their backup media (e.g., other hard drives, backup tapes, floppy disks, DVD's, Jaz cartridges, CD-ROMs, etc.) or otherwise, whether such files have been reduced to paper printouts or not. More specifically, you are to preserve all of your e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as Palm Pilot, HP Jornada, Cassiopeia or other Windows CE-based or Pocket PC devices; all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches and "cookies" files generated at the workstation of each employee and/or agent in your employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail. Further, you are to preserve any log or logs of network use by employees or otherwise, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time from 10/5/2015 to the present.

48.  All documents and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

49.  All e-mails, and information about e-mails (including message contents, header information and logs of e-mail system usage) sent or received by the driver and co-driver involved in the collision for period of time involving the collision and the seven (7) days before and after the collision.

50. All other e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) containing information about or related to the driver's involvement in the collision for period of time involving the collision and the seven (7) days before and after the collision.

51. All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to the maintenance, maintenance schedule, and repairs made to any portion of the vehicle (mechanical or otherwise) being driven by JOHN DOE in the incident made the basis of this suit for period of time involving the collision and the one (1) year before the collision to the present.

52. All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to the collision for period of time involving the collision and the six (6) months before the collision to the present.

53. All word processing files, including prior drafts, "deleted" files and file fragments, containing information about or related to the use of the vehicle being driven by Charlie Hand on the date of the collision made the basis of this suit for period of time involving the collision and the six (6) months before the collision to the present:

54. All electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to the maintenance, maintenance schedule, and repairs for the vehicle (mechanical or otherwise) for period of time involving the collision and the one (1) year before the collision to the present.

55. All files, including prior drafts, "deleted" files and file fragments, containing information from electronic calendars and scheduling programs regarding or related to the routes and destinations driven by Charlie Hand for period of time involving the collision and the one (1) year before the collision

56. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to drug screening and/or testing performed on Charlie Hand for period of time involving the collision and the forty-eight (48) hours following the collision.

57. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to any and all prior auto collisions where Charlie Hand was involved.

58. All activity logs as to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed above, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

59.     Any legible copies of the position history for all vehicles being operated by Charlie Hand for you as of the date of the incident, and the six (65) months preceding said date.

60.     Any fuel receipts, fuel cards, toll both receipts and weight station tickets which relate to the operation of any vehicles on Defendant's behalf obtained by Charlie Hand for the date of the incident and the thirty (30) days preceding said date.

61.     Any employee payroll records and paycheck stubs for Charlie Hand for the date of the incident and the six (6) months preceding said date.

62.     Any documents which reasonably identify the pick-up and drop-off locations for any loads which were transported by Charlie Hand as of the date in question, and the thirty (30) days preceding said date.  NOTE:  This request includes all documents which reflect any trips necessary to get to the pick-up locations referenced herein.

63.     Produce complete, legible copies of all XATA records for the vehicle being operated by JOHN DOE on the date in question, and the six (6) months preceding said date.

64.     Produce complete, legible copies of all communications (including electronic and on-board computer communications) sent by Defendant to Charlie Hand on the date in question, and the six (6) months preceding said date.

65.     Produce complete, legible copies of all expert reports that were generated as result of any vehicular accidents (injury and non-injury) involving any vehicles owned by Defendant or being operated on Defendant's behalf during the three (3) years preceding the incident in question.

66.     Produce complete, legible copies of all pleadings which contain any allegations of negligence which name Defendant as a party and were filed during the three (3) years preceding the incident in question.

67.     Produce complete, legible copies of all daily trip envelopes and reports for Charlie Hand for the date in question and the six (6) months preceding said date.

68.     Produce complete, legible copies of all trip expenses for Charlie Hand for the date in question and the six (6) months preceding said date.

69.     Produce complete, legible copies of all records which reflect the driver training for JOHN DOE while he was employed by you and/or operated a vehicle on your behalf.

70. Produce complete, legible copies of all your policies and procedures regarding driver safety that were in effect on the date of the incident.

71. Produce complete, legible copies of all your policies and procedures regarding accident avoidance that were in effect on the date of the incident.

72. Produce a copy of any educational videotape or DVD which pertains to the safe operation of a commercial vehicle that was being used by Defendant as of the date in question for driver training purposes.

## REQUESTS FOR ADMISSION

1.     That JOHN DOE, at the time of the incident made the basis of this suit, was driving the Tractor-trailor in the course and scope of his employment with Thomas Transportation.

ADMIT OR DENY: _____

2.     That JOHN DOE, at the time of the incident made the basis of this suit, was operating the vehicle in violation of Texas Transportation Code Sec. 545.351(b)(2).

ADMIT OR DENY: _____

3.     That JOHN DOE, at the time of the incident made the basis of this suit was operating the vehicle in violation of the Federal Motor Carrier Safety Regulations.

ADMIT OR DENY: _____

4.     That Defendant JOHN DOE was solely at fault in this crash.

ADMIT OR DENY: _____

5.     That Plaintiff Douglas Greer did nothing to cause or contribute to the crash.

ADMIT OR DENY: _____

6.     Your driver JOHN DOE's driver's license has been suspended or revoked on at least one occasion.

ADMIT OR DENY: _____

7.     Your driver JOHN DOE has been convicted of more than one traffic violation prior to this collision.

ADMIT OR DENY: _____

8.     Your driver JOHN DOE has been involved in more than one motor vehicle accident in the last ten years.